**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:19-CV-00194-HBB**

**KAREN M. STEVENSON**                                                                           **PLAINTIFF**

**VS.**

**ANDREW SAUL, COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**                                               **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Karen M. Stevenson ("Plaintiff") seeking

judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both

Plaintiff (DN 14) and Defendant (DN 17) have filed a Fact and Law Summary.   For the reasons

that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED**

for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the

undersigned United States Magistrate Judge conducting all further proceedings in this case,

including issuance of a memorandum opinion and entry of judgment, with direct review by the

Sixth Circuit Court of Appeals in the event an appeal is filed (DN 12).   By Order entered October

11, 2018 (DN 13), the parties were notified that oral arguments would not be held unless a written

request therefor was filed and granted.   No such request was filed.

FINDINGS OF FACT

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on May 17, 2016 (Tr. 20, 229-35, 236-45). Plaintiff alleged that she became disabled on May 10, 2010, as a result of carpal tunnel, bladder issues, high blood pressure, high cholesterol, depression, and an intellectual disability (Tr. 20, 74-75, 86-87, 257). These claims were initially denied on August 29, 2016, and the denials of the claims were affirmed upon reconsideration on November 22, 2016 (Tr. 20, 84, 101, 114, 131). Administrative Law Judge Dwight D. Wilkerson ("ALJ") conducted a hearing from Louisville, Kentucky on July 3, 2018 (Tr. 20, 41-42).[1] Also present at the hearing was Plaintiff and her non-attorney representative John Sharpensteen[2] (Tr. 41-42). During the hearing, Shannon Hollander testified as a vocational expert[3] (Id.).

The ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 30, 2015 (Tr. 23). At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 10, 2010, the alleged onset date (Id.).

---

1    The Court notes a conflict of information between the ALJ's report and the hearing transcript. The discrepancies include how the hearing was conducted, who was present, and where the parties were located. The Court relies on the hearing transcript to accurately confirm the information in the ALJ's report (Tr. 20, 41-42).

2    From this Court's review of the transcript, it is initially uncertain whether the Plaintiff was present in person or by video. The transcript description states, "The claimant appeared in person …" (Tr. 41). However, in the ALJ's opening statement, he mentions, "I'll note for the record that [Plaintiff is] present today via video teleconference from [her] representative's office while I'm here at the Louisville hearing office" (Id.). Drawn from the ALJ's report, it is presumed that Plaintiff was virtually present to the proceedings and that Mr. Sharpensteen's office is in Elizabethtown, Kentucky (Tr. 20 ("The claimant appeared in Elizabethtown, KY …")).

3    The transcript description states, "Also present was Shannon Hollander, Vocational Expert" (Tr. 41), but later statements by the ALJ assert Ms. Hollander was present via telephone (Tr. 42). It should also be noted that the ALJ's report describes Vargas Vocational Consulting as the impartial vocational expert, but the transcript details the testimony of Shannon Hollander (Tr. 20, 42). After review, the Court notes for clarity of the record that Ms. Hollander is employed by Vargas Vocational Consulting.

At the second step, the ALJ determined, since the application date, that Plaintiff has the following severe impairments: history of carpal tunnel syndrome, right sided hearing loss, depression, and anxiety/PTSD (Id.).   Further, the ALJ found that since the date last insured, Plaintiff's sole medically determinable impairment was status post bladder surgery, but the ALJ also opined that Plaintiff did not have a severe impairment or combination of impairments because there was no impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for twelve (12) consecutive months (Id.).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 25).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), because Plaintiff cannot climb ladders, ropes, or scaffolds but can frequently climb ramps/stairs, stoop kneel, crouch, and crawl; Plaintiff can frequently but not constantly handle and finger with the bilateral extremities; Plaintiff should not work in a loud or unusually noisy work environment; Plaintiff is able to sustain performance of simple and detailed but not complex tasks in a lower stress work environment without strict quotas, fast pace, or frequent changes or more than occasional superficial interactions with others but no work with the public (Tr. 26).   The ALJ found that Plaintiff is unable to perform any past relevant work (Tr. 31).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 31-32).   The ALJ found that Plaintiff is able to perform a significant number of jobs that exist in the national economy (Id.).

Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from May 10, 2010 through the date of the decision (Tr. 32). Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 226-28). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

> 3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?
>
> 4)   Does the claimant have the residual functional capacity to return to his or her past relevant work?
>
> 5)   Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

## Challenge to Finding No. 7

1.  Arguments of the Parties

Plaintiff raises a contention that the ALJ "failed to properly reconcile the weight afforded to the opinion proffered by consulting psychologist, Greg Lynch, Ph.D. with his RFC and then failed to properly weigh the balance of Dr. Lynch's opinion" (DN 14 PageID 775).[4]  Plaintiff quotes the ALJ's determination in awarding partial weight to Dr. Lynch's opinion but argues that the ALJ had not adequately bridged the gap between the partial weight given to Dr. Lynch and the ultimate determination of the Plaintiff's RFC (Id. at PageID 776).  In supporting her position, Plaintiff contends that "the ALJ credited [a] portion of Dr. Lynch's opinion wherein he proffered that Plaintiff had moderate limits in her ability to sustain attention and concentration towards the performance of simple repetitive tasks," while the ALJ conversely determined that "Plaintiff is able to sustain performance of simple and detailed but not complex tasks;" the use of Dr. Lynch's

---

4        The Plaintiff's primary challenges to the ALJ's analyses focus on the alleged errors regarding the Plaintiff's mental impairments; there are no contentions about alleged errors regarding the Plaintiff's physical impairments.   As such, the Court's review of the ALJ's analyses will be limited only to mental impairments.   Hix v. Director, Office of Workers' Comp. Programs, 824 F.2d 526, 526 (6th Cir. 1987) ("[U]nder the exhaustion of remedies doctrine, a court should not consider an argument that has not been raised in the agency proceeding that preceded the appeal.") (citing Cox v. Benefits Review Bd., 791 F.2d 445, 446 (6th Cir. 1986)).

opinion, Plaintiff alleges, is "clearly contrary to the weight the ALJ afforded Dr. Lynch's opinion" (Id. at 777). Further, Plaintiff plainly states, "[h]ere, this court is left to wonder by what reasoning the ALJ concluded that Plaintiff was able to sustain in the performance of simple tasks where he credited that portion of Dr. Lynch's opinion that precluded" (Id.). Throughout her Fact and Law Summary, she recounts instances where Plaintiff was crying, distressed, disheveled, sad, and maintained poor eye contact with her therapist (DN 14 PageID 781-82 (citing Tr. 557, 571 582-87, 592, 601-05, 628)). Finally, Plaintiff blatantly states that "the ALJ's reliance on seemingly benign findings upon mental status examination is a mischaracterization of the evidence and evinces a fail [sic] to understand of the nature of mental illness" (DN 14 PageID 780).

Defendant asserts that the "ALJ alone is responsible for determining a Plaintiff's residual functional capacity" (DN 17 PageID 801); 20 C.F.R. § 416.946(c), and that Plaintiff's full argument is "without merit and is nothing more than a disagreement with how the ALJ decided to weigh differing opinions …" (DN 17 PageID 801). Here, Defendant even notes the brevity of the ALJ's explanations for awarding "partial weight" to Dr. Lynch's opinions, but the Defendant still asserts that the ALJ's award was properly explained as to why Dr. Lynch's opinions were not supported by the record (DN 17 PageID 802 (citing Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 651 (6th Cir. 2009))). Defendant attempts to dismiss Dr. Lynch's analysis and characterizes him as "a one-time consultative examiner, and was not a treating source" (DN 17 PageID 802). According to Defendant, "the Sixth Circuit does not require an ALJ to explicitly give good reasons for not adopting this opinion" (Id. (referencing Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010) & Smith v. Comm'r of Soc. Sec., 482 F.3d 873 (6th Cir. 2007))).

In contrast to Plaintiff's assertions of mischaracterization and insufficient analysis, Defendant states "the ALJ went above and beyond what was required of him, and offered a very robust discussion of why [Dr. Lynch's] assessment was worthy of only partial weight" (DN 17 PageID 803).   Further, Defendant utilized instances from the medical records that recount when Plaintiff was smiling and talking about her grandson, when Plaintiff was remaining active in the community, reading her Bible, walking with her sister, and when Plaintiff reported being excited about an upcoming vacation (DN 17 PageID 807-08 (citing Tr. 543-44, 549, 558, 563-65, 577). Finally, Defendant notes that "both state agency reviewing psychologists specifically noted that Dr. Lynch's marked limitations were not consistent with his examination findings or the record as a whole" (DN 17 PageID 808).

2.  Discussion

As Plaintiff filed her applications prior to March 27, 2017, the rules in 20 C.F.R. §§ 404.1527 and 416.927 apply to the ALJ's assignment of weight to the medical opinions in the record.   The regulations require ALJs to evaluate every medical opinion in the record.   20 C.F.R. §§ 404.1527(c); 416,927(c).   The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source.   20 C.F.R. §§ 404.1527(c); 416.927(c).   If controlling weight is not assigned to the treating source's opinion, the ALJ must consider the factors in paragraphs (c)(1)-(6) of this section in deciding how much weight to accord each of the medical opinions in the record, including the medical opinion from the treating source.   20 C.F.R. §§ 404.1527(c); 416.927(c). However, the opinions present in this case do not fall within the definition of a treating source. The regulations provide that the ALJ "will consider" the medical findings of state agency

psychological consultants because they "are highly qualified and experts in Social Security disability evaluation."   20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).   When the opinion of a non-examining State Agency medical/psychological advisor is consistent with the record, the opinion represents substantial evidence to support the ALJ's decision.   *See* Atterbery v. Sec'y of Health & Human Servs., 871 F.2d 567, 570 (6th Cir. 1989); Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1082-83 (6th Cir. 1987) (per curiam).   When a non-examining source renders an opinion without having the opportunity to review the complete case record, the ALJ must consider the subsequently submitted evidence in assessing how much weight to give that source's opinion.   *See* Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 632-33 (6th Cir. 2016); Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009).

Here, Plaintiff plainly asserts that "contrary to the ALJ's contentions, the record is replete with positive observations and mental status findings that are probative of Plaintiff's claim for disability and supportive of Dr. Lynch's opinion" (DN 14 PageID 781).   However, Plaintiff fails to direct the court's attention to a singular document in citation towards this point, instead attempting to paint a picture with broad strokes of what the record may contain in piecemeal. Plaintiff attempts to show error in the ALJ's analysis by noting more weight is given to an examining source, as opposed to a non-examining source (DN 14 PageID 778).   Further, Plaintiff cites to an unpublished opinion from the Eastern District of North Carolina by quoting "Accordingly, affording little weight to the opinions of Drs. Sewell and Mohammed because they were one-time examiners, without more, fails to articulate a sufficient basis to discount these assessments.   (Id.); Smith v. Colvin, No. 4:15-CV-00175-RN, 2017 WL 27942, at *8 (E.D.N.C. Jan. 3, 2017).

However, it is an accurate characterization to name Dr. Lynch as a one-time consultative examiner, and he was not a treating source (Tr. 513-518).   Plaintiff only visited Dr. Lynch one time, solely for an examination based upon her disability claims, and the issues discussed with Dr. Lynch were predominantly reported by Plaintiff (Id.).   When not reviewing reports from Plaintiff, Dr. Lynch noted that Plaintiff was dressed "neat and clean;" "grooming seemed within normal expectation;" "cosmetic use seemed appropriate;" "able to spell the word 'horse' backwards;" "completed Digit Span Backwards correctly for two trial of three digits;" "oriented to the current month, date, day of the week, and year;" "could recall three of three unrelated words after a delay;" "memory functioning seemed normal;" "maintained normal eye contact;" appeared "adequately cooperative;" "maintained soft speech flow;" "thought content seemed generally appropriate to the mood and circumstances;" "thought organization seemed goal-directed;" "exhibited an average fund of knowledge;" "abstract ability seemed normal to somewhat concrete;" "judgment and reality testing seemed adequate;" and "reported adequate social support from her children, friends, and church" (Tr. 516-17).

In the ALJ's analysis of Finding No. 7, the ALJ recounts the treatment of Plaintiff and notes "it is apparent that her medications are improving her mood" and that "the longitudinal record demonstrates improvement in the claimant's mental status with treatment" (Tr. 28); *see also* (Tr. 567-69, 601-03, 606-07, 613-15, 622).   "Treating notes indicate the claimant was making steady progress and she had been getting out more and socializing with family and friends (Id. citing 538-623, 624-636, 650-690).   The ALJ draws upon the medical observation reports to note many of the same characteristics described by Dr. Lynch (Id. citing 538-623, 624-636, 650-690, 693-705).   Even then, the ALJ considers "abnormal findings" that appeared in sessions in 2016;

the same sessions that Plaintiff draws this Court's attention to (Tr. 28; DN 14 PageID 781-82).   In

reviewing those sessions, the ALJ mentions that many of these abnormalities are, at least in part,

derived from Plaintiff's own subjective reports (Tr. 28).

As the ALJ continues his analysis, the ALJ highlights the same descriptions that this Court

did—and the ALJ mentioned even more than this Court—from Dr. Lynch's report (Tr. 29).   But,

the ALJ noted the GAF score that Dr. Lynch assigned to Plaintiff, a score of 53, and gave little

weight to this finding (Tr. 29 citing 513-518).   The ALJ explained that the GAF score "is

subjectively assessed in nature" (Id.).   With Dr. Lynch's opinion, the ALJ gave partial weight, the

ALJ states that the portions of Dr. Lynch's opinion "generally finding no more than moderate

limits is supported by the conservative treatment received and the longitudinal treating exams that

have generally been unremarkable" (Tr. 29-30).   Conversely, the ALJ responds "[t]he portion of

the opinion finding moderate to marked limits in the capacity to respond appropriately to

supervision, coworkers, and work pressure in a work setting is not supported by the level of

treatment received, the admitted activities, or the longitudinal treating mental status exams …"

(Tr. 30 citing 513-518).

Finally, the ALJ turns to the state agency psychological consultant's mental assessment

(Tr. 30).   The consultant states that the Plaintiff "is capable of performing simple and somewhat

more complex tasks" (Id.).   However, the ALJ disagrees with the opinion of the state agency on

this determination, because the ALJ "afforded slightly greater limits in the [RFC]," but the ALJ

concluded that the evidence in the records supports an award of great weight to the state agency's

assessment (Id.).   In awarding great weight to these assessments, the ALJ also was able to consider

what factors the state agency reviewed, considered, and analyzed when finalizing their

determinations, specifically regarding their review of Dr. Lynch's opinion. In one report, Dr. Lynch's opinion was "given little weight as it is an over estimation of limitations," while the other report gave partial weight since the findings were "supported by the evidence though not to marked degree as suggested …" (Tr. 95, 126).

Even though the ALJ awarded great weight to the state agency's mental assessment, the ALJ still considered the findings of Dr. Lynch, as there was still partial weight given. In reconciling these different weights, the ALJ placed more stringent limits on Plaintiff's abilities than assessed by the state agency, including "a lower stress work environment without strict quotas, fast pace, or frequent changes," no "more than occasional superficial interactions with others," and "no work with the public" (Tr. 26, 30, 93-100, 123-130). By disagreeing with an assessment regarding the limitations of a Plaintiff and applying even greater restrictions, the Sixth Circuit has held this analysis to be appropriate, the ALJ has constituted "some indication" of considering the nature of the opinion, and the ALJ has applied at least some scrutiny towards the assessment. Kepke v. Comm'r of Soc. Sec., 636 Fed. App'x. 625, 632-33 (6th Cir. 2016).

Furthermore, Plaintiff argues that the "ALJ's RFC provides that Plaintiff is able to sustain performance of simple and detailed but not complex tasks. This conclusion is clearly contrary to the weight the ALJ afforded Dr. Lynch's opinion" (DN 14 PageID 777) (internal citations omitted). The ALJ found that Dr. Lynch's opinion of "slight limits" as to Plaintiff's ability to "carry out instructions towards the performance of simple repetitive tasks" was supported by "the conservative treatment received and the longitudinal treating exams that have generally been unremarkable" (Tr. 29-30).

Plaintiff's assertion is that the supported portion of Dr. Lynch's opinion regarding slight limits precludes the ability for the ALJ find an RFC for Plaintiff to sustain performance of simple and detailed but not complex tasks (DN 14 PageID 777).   However, after review of the ALJ's determination, the ALJ's analyses, and the substantive evidence in the record, the Court disagrees with Plaintiff's claim of preclusion.   In the ALJ's finding of partial weight to Dr. Lynch's opinion, especially with support in the area regarding the complexity of tasks, the ALJ also awarded great weight to the state agency, who also found Plaintiff was not significantly limited in her ability to carry out very short simple tasks and would be able to complete a normal workday and workweek without interruptions from psychologically based symptoms (Tr. 98-99).   However, Plaintiff was moderately limited in her ability to carry out detailed instructions and in her ability to maintain attention and concentration for extended periods (Id.).   Between the great weight given to the state agency and the partial weight to Dr. Lynch, the ALJ balanced the opinions and the limitations present in the record.

Here, the ALJ did not give partial weight to Dr. Lynch's opinion solely because he was a one-time examiner, as Plaintiff warned from Smith v. Colvin.   Instead, the ALJ describes the report from Dr. Lynch, details the portions of the opinion where the ALJ disagrees with Dr. Lynch when viewing the entirety of the record, and provides reasoning from the record to sufficiently describe why the ALJ disagrees (Tr. 26-31).   The ALJ also weighed Dr. Lynch's opinion in tandem with the other medical opinions and evidence in the record.   Further, the ALJ sufficiently describes the factors and considerations present during the RFC determination.   As such, the ALJ's determination was supported by substantial evidence from the record.

Challenge to Finding No. 4

1.   Argument of the Parties

Plaintiff disputes the ALJ's determination in step 2 for allegedly failing to consider whether the Plaintiff's mental impairments existed prior to her date last insured (DN 14 PageID 784). Plaintiff argues the ALJ merely considered whether Plaintiff was disabled as of the date last insured (Id.).   Additionally, Plaintiff asserts that the ALJ determined that Plaintiff had the medically determinable impairment of status post bladder surgery through December 30, 2015, but the ALJ only considered physical impairments and not mental impairments (Id. referencing Tr. 23).   Plaintiff claims that "the ALJ considered Plaintiff's application for Disability Insurance Benefits separately from her application for Supplemental Security Income" (DN 14 PageID 784). Ultimately, Plaintiff contends "[t]he ALJ offered no meaningful analysis that would explain why these [mental] impairments would not have existed prior to Plaintiff's date last insured," while claiming "the ALJ apparently believed that [Plaintiff] had no mental impairments until the very day that she underwent her psychological evaluation with Dr. Lynch" (DN 14 PageID 785).

In contrast, Defendant asserts that substantial evidence in the record supports the ALJ's determination that Plaintiff's mental impairments were not severe prior to her date last insured (DN 17 PageID 813).   Defendant further asserts that Plaintiff had failed to meet her burden in producing sufficient evidence to show she had a severe mental impairment before December 30, 2015 (Id. at PageID 814).   To bolster this claim, Defendant highlights Plaintiff's timeline for seeking medical help, including her consultative examination with the Agency being 227 days after the expiration of her insured status and her call to a mental health crisis line being over 358 days after her date last insured (Id. at PageID 814-15).

A primary contention between Plaintiff and Defendant is whether the ALJ's use of Plaintiff's delay in seeking mental health treatment creates a credible insight into a "failure … [that] may cast doubt on a claimant's assertions of disabling pain" (DN 17 PageID 815 (quoting Strong v. Soc. Sec. Admin., 88 F. App'x 841, 846 (6th Cir. 2004)) or if the ALJ's use of this information is more comparable to "chastis[ing] one with a mental impairment for the exercise of poor judgment in seeking rehabilitation" (DN 14 PageID 786 (citing Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)).

2.   Discussion

At the second step in the sequential evaluation process, a claimant must demonstrate she suffers from a "severe medically determinable physical or mental impairment that meets the duration requirement … or a combination of impairments that is severe and meets the duration requirement …"   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); SSR 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). To satisfy the "severe" requirement, the claimant must demonstrate the impairment or combination of impairments "significantly limit" their physical or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a).[5]   The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. §§ 404.1522(b), 416.922(b).[6]

---

[5]     Notably, "an impairment can be considered not severe only if it … minimally effects work ability, regardless of age, education and work experience."   Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988).

[6]    Examples of basic work activities are as follows:

     (1)   Physical functions such as walking, standing, sitting, lifting, pushing, reaching, carrying, or handling;
     (2)   Capacities for seeing, hearing, and speaking;
     (3)   Understanding, carrying out, and remembering simple instructions;
     (4)   Use of judgment;
     (5)   Responding appropriately to supervision, co-workers and usual work situations; and
     (6)   Dealing with changes in a routine work setting.

   20 C.F.R. §§ 404.1521(b), 416.921(b).

To satisfy the "medically determinable" requirement the claimant must present objective medical evidence that demonstrates the existence of a physical or mental impairment.   20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017). To satisfy the "duration" requirement the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months."   20 C.F.R. §§ 404.1509, 416.909.

In the present case, the ALJ's analysis of Finding 4 does not mention or name any mental impairments (Tr. 23).   But, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source" and not from Plaintiff's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."   20 C.F.R. § 404.1521.   Additionally, Plaintiff bears the burden of providing sufficient evidence to prove her disability prior to her date last insured.   Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988); *see also* 20 C.F.R. § 404.1512(a)(2) ("The evidence in your case record must be complete and detailed enough to allow us … to determine— (i) The nature and severity of your impairment(s) for any period in question; (ii) Whether the duration requirement … is met …").

Upon review of the medical evidence in the record, one of the first instances of depression appearing in medical documentation is a discharge document from January 13, 2013 (Tr. 455). The document states that the history was provided by Plaintiff and the history of psychological disorders simply states "Depression" (Id.).   There is no further description about what symptoms that self-diagnosis may present (Id.).   Later in the same document, the section "Neurological Assessment Parameters" states "Abnormal Findings," but then continues to state that Plaintiff was "Alert/oriented to person, place and time.   Pupils equal/reactive to light.   Behavior appropriate to situation.   No obvious cognitive impairment, facial drooping, difficulty [with] swallowing.

Active ROM [sic] of all extremities with symmetry of strength, no numbness or tingling" (Tr. 458).   Even further into the document, it shows in three different locations that on a date of January 18, 2013, the "Neurological Assessment Parameters" were normal, and the exact same findings were inserted directly below the normal finding (Tr. 460-62).   The next instance of depression showing up on the record is after December 30, 2015, when Dr. William E. Waltrip dictating the results of an examination of Plaintiff, but Dr. Waltrip did not conduct the mental health evaluation; instead, Dr. Greg V. Lynch conducted the evaluation—the same evaluation and findings that are at issue above (Tr. 509-12, 514-18); *see supra* "Challenges to Finding No. 7".

The ALJ ultimately concluded that "the longitudinal record does not demonstrate the presence of any severe impairments prior to the date last insured" (DN 14 PageID 784; Tr. 23). Upon review of the record, substantial evidence is present to support the ALJ's determination.

In attempting to show that her depression existed prior to her date last insured, Plaintiff cites her own statements from September 19, 2016, that she was "depressed and fought with it, and [Plaintiff] use[d] to take medication a long time ago, but [Plaintiff doesn't] know. [Plaintiff] tried to deal with it on [her] own, but ya [sic] know.   Everything builds up and after awhile [sic] and becomes overwhelming" (DN 14 PageID 785; Tr. 590).   In reviewing the record, the only instance of medication prior to the 2017 was mentioned in Dr. Lynch's examination, in which he states that Plaintiff "was prescribed an unknown psychoactive medication years ago" (Tr. 515). No other mention of any other medication use close to the alleged onset date is mentioned in the record.   Furthermore, the Court already noted that the ALJ should not use Plaintiff's own statement of symptoms, diagnosis, or medical opinion to establish the existence of an impairment(s).   20 C.F.R. § 404.1521.

This Court certainly understands the difficulties that Plaintiff faced when seeking mental health treatment.   While mental health treatment is becoming more acceptable and prevalent in today's society, the Court still is cognizant of the stigmas that surround mental health treatment. This Court does not chastise Plaintiff for the timing of her mental health treatment, nor does the Court attempt to belittle or disparage the mental, physical, and emotional toll that these impairments press upon her.   Instead, the Court applauds Plaintiff in asking for help, and based on the record, Plaintiff was making positive strides towards helping herself.

However, while Plaintiff was ultimately able to seek help regarding her mental health, there is no documentation in the record to show that Plaintiff was plagued by these impairments prior to her date last insured.   The ALJ cannot make a determination of whether a mental impairment existed in the absence of any medical evidence to prove a claim.

At this stage of review, this Court also does not have the discretion nor the ability to determine whether or not Plaintiff suffered from these impairments prior to her date last insured. This Court is limited to an even more stringent role than the ALJ—to simply look to the record, the medical evidence, and the findings of the ALJ to determine whether the ALJ's findings were supported by substantial evidence.

Based on the dearth of information present in the record regarding Plaintiff's mental impairments prior to the date last insured, Plaintiff has failed to meet her burden of presenting objective medical evidence (i.e., signs, symptoms, and laboratory findings) that demonstrates the existence of mental impairment on or before December 30, 2015, her date last insured.   *See* 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017).   As such, the ALJ's determination to Finding No. 4 is supported by substantial evidence.

Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. (Id.). After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief with regard to her challenge.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

Copies:       Counsel

19